Case number 24-7004. Mary Cecilia Williams, appellant, versus Julio E. Aviles, doing business as Universal Air Dock Services and Frederick Mutual Insurance Company. Ms. Williams for the appellant, Ms. Carson for the appellees. Good morning, Ms. Williams. Good morning, Your Honor. May it please the Court, Mary Williams, appellant pro se. I am a lawyer, a Wills and Estates Probates lawyer, but I'm also here as the homeowner of the home that was at 1257 Carrollsburg Place in the District. For the past 30 years, the District of Columbia Courts have consistently upheld and strictly enforced the District of Columbia's licensing statutes and regulations, from Truett v. Miller to DeBacci v. Self, Saul v. Broad, including this Court, until now. I stand before you today to say that the District Court has erred in upholding the District of Columbia statute. The District Court erred by not adhering to the protections that are afforded under the Consumer Protection Procedures Act. The District's licensing and statutes and regulations under Chapter 47-2853 requires all HVAC technicians, and we use the word HVAC, versus heating and air conditioning, so that we would understand this, to be licensed in the District of Columbia. There has been no discussion or decision that Mr. Aviles was not a licensed contractor at the time. Mr. Aviles has stipulated to the point that he has never held a valid contractor's license ever, in any state, and neither during the time in 2016 or 2017 when he installed the trained HVAC system in my home. But I'm going to address the legal issues in the verdict. The District Court judge, Judge Meda, in the verdict, failed to provide specific findings of fact and conclusions of law in violation of the rules, violation of Rule 52A1, the Federal Rules of Procedure. The District Court, in this, in his decision, the 13-page decision, did not address the actual question of law. The question before the Court was whether or not Mr. Aviles' omission of the non-licensing status was material. At no time did Judge Meda address this in either the factual nor did he draw any conclusions of law. In fact, Judge Meda completely overlooked this material fact and the questions of law. So you just said it was an omission, but I thought he had asked you, are you alleging an omission, that is that it was never mentioned, or are you alleging a misrepresentation? And we affirmatively lied to you, and I thought we were looking at a misrepresentation, not an omission. No, no, Your Honor. I was misunderstanding. During the closing of the trial, Judge Meda did ask me if I was alleging affirmative statements made by Mr. Aviles. I understood him to ask me if I was just asserting affirmative actions. Under that, though, however, under the Consumer Protection and Procedures Act, I allege four subsections, and that is what was the question. But it was more of a factual question. What's your claim? Did he lie about this or did he just not mention it? And I thought your answer was he lied about it, and then there's just a credibility determination. Under the Consumer Protection and Procedures Act, there were four subsections, and what I alleged was that it did not matter whether it was affirmative. My evidence was affirmative. But he, in his defense, claimed omissions. But under the four subsections, I charged whether or not it was a material or an omission, a willful omission. Because underrepresentation, false representation, encompasses both affirmative misstatements and willful omissions. When the judge asked me whether I was just affirmative actions, which I had evidence of affirmative, but he would not let me finish to say that it doesn't matter under the Consumer Protection and Procedures Act. He would have been found violating either one, section A, B, E, and F. So certainly the law has alternative theories of liability, but at trial, you have to pick what your theory of the case is and commit to a factual narrative that is what you allege happened. And correct me if I'm wrong, my understanding was you committed to a narrative that there was an affirmative misrepresentation, there was testimony from both sides, and judge made a credibility determination that the misrepresentation wasn't made, which we review for clear error. The claims under my first complaint, and it was the same, each of those subsections, the affirmative was evidence. The judicial admissions, each were in the answers, interrogatories, and subsequent defenses, where Mr. Velez stated that he told me he was an authorized, certified, trained dealer, and so forth. Those were affirmative. In the defense, as I pointed out during the trial, is that under the DCPPA, that it doesn't matter, a willful omission was still material, and it was a violation of section E, R, F. And that was what we were there for, to determine if his omissions were material. That was the question before us. That's what my understanding was at that time. And yes, during trial, I did present the affirmative discussions, but the verdict in the factual findings were totally erroneous. And this is why I'm asking you to reverse this, because the factual findings were totally erroneous. The judge, during the closing to find material based on Sald versus Rowan, and his quality, and yet in the verdict, a few days later, there was no mention of this actual recognition. There's nothing in the verdict that where he even considers the unlicensed status. And I just can't imagine we hear that even on summary judgment, which I applied for in that matter, based on the affirmative statements, which were considered judicial admissions, they were signed, they were witnessed, but he allowed no consideration of that, and went straight to the credit, my credibility, when the question before us was whether or not his omissions were material. The most egregious part of it was in terms of the verdict. And I chose this part first was because throughout this very lengthy litigation, seven years in, on a basic personal injury claim, 117 documents filed. And we started with a defendant who pretended to be a licensed contractor and trained dealer, because that's what I was looking for to install in my home, but then to find during deposition in 2021 that he's not, and that how did he obtain all of these It was a scheme, a scheme to defraud, which kept it going and going and going. We're here now, and I'm just looking at summary judgment. How in the world did I get to here, the U.S. Court of Appeals? I did not expect that I would be appearing before you on this issue, for sure. I had hoped it would be in and out, but I'm here. And on behalf of consumers everywhere, I'd like to change my hat to being the homeowner. If you're out looking for HVAC and shopping and doing my due diligence, which is why in the summary judgment and the part where the judge excludes my expert, well, I have to ask the question, why should I have an expert when Mr. Aviles is not an expert installer? He just pretends to be one. He's not licensed by the District of Columbia, so who's giving him expertise? I would say on summary judgment, the standard of care has to be the reasonable homeowner, because he's no different, given that he's not licensed. Your time has expired. So we'll give you a minute for rebuttal. Thank you. Thank you. Ms. Carson. Good morning. Good morning. May it please the Court, Sandra Carson for Defendant Apollio Aviles. I want to start first with the issue of the verdict on the Consumer Protection Act case. I believe Judge Maida was very clear in his questioning of Ms. Williams, what do you want me to find? Do you want me to find it was an affirmative misrepresentation? Are you saying you do not rely on the fact that he failed to disclose? I believe there were four different times he questioned her on that, and each time she asserted that her cause of action, her claim that she wanted him to find on was affirmative representations regarding his licensure and trained certification. That is a valid choice for her to make as a plaintiff as to how to pursue her claim. I believe the Court's decision in that regard to rule on affirmative misrepresentations only was legally correct. Indeed, Ms. Williams continually referred to the failure to disclose as something the defense was raising. It was a defense. It was a defense. So I think that that ruling was correct, and I think that is why it wasn't addressed in the Court's verdict later. Something else Ms. Williams mentioned was the idea that Judge Maida said he was constrained to find that the failure to disclose by Mr. Avilaz was material. That conversation was not so much a statement of fact on his part, but it was a discussion and a colloquy between the Court and myself as to the hypothetical. I believe Judge Maida prefaced it with something to the effect of, if this is part of the case, which I'm not sure that it is, let me ask you this question, and how is it not material? We had a discussion about that, but having determined that it wasn't part of the case based on the plaintiff's own representation to the Court, I think there has been no finding that any failure to disclose was material. So in the event that this Court were to find that it had to reverse on that issue, obviously findings need to be made by the trial court judge. But I do believe that the judge's actions in that regard were legally correct. Why didn't he err on judicial admission? He didn't err on judicial admissions because those were waived by the plaintiff, both by her failure to argue that they were judicial admissions at trial, her failure to object to the introduction of contrary evidence, indeed in her own case in chief plaintiff put in evidence that contradicted the so-called judicial admission. Our case law doesn't admit of that. It may later, it doesn't now. He cited cases from other circuits, not from our circuit. In our circuit, judicial admission has to be accepted as a judicial admission, at least as the law is now. Well, I would refer the Court to the case U.S. X. Raul Yesudian v. Howard University. It's 153 F. 3rd 731 from this circuit in 1998. There the Court was faced with a situation where a party admitted originally that a handbook, an employee handbook, equaled a contract and later at trial put in evidence to the contrary. This Court recognized that the plaintiff failed to note that the original admission also failed to object when opposite evidence was introduced and did cite and made note of the fact that, you know, sometimes that that is considered a waiver and citing American title versus Now in that Court, I acknowledge the Court did not decide the issue of waiver. It's, you know, basically said we don't decide that here, but I think that that case certainly suggests that the possibility of a waiver. The admission is generally binding on the parties in the Court. And then he cites only authority from other circuits. I believe that plaintiff's own actions. Binding, I think her actions in introducing contrary evidence would take away from any binding nature of those admissions. She didn't have she brought that in herself. She she didn't. It wasn't a matter of defense putting that into evidence first. She put Mr. Avila on the stand. It is in his answers, which are not verified. They were not signed by him. I know that doesn't change the fact that they are pleading. Our case laws of parties admissions and its pleadings are generally binding on the parties in the Court. I do understand that. I do think, though, her actions in introducing contrary evidence on her own in her case in chief support the judge's reliance on the authority that he did in his actions in that regard. Is it correct that Mr. Avila was asked about that? He said he didn't know why that inaccurate representation. He did. Yes, that is correct. And that was a pleading prepared by counsel. And there is Mr. Avila, this is very heavy Hispanic accent. There may have been some communication issues during our first things. On that issue, that was our version. And I think that weighing the credibility of the parties as the court did, I believe he did so properly. I do think the credibility of the parties is an issue. The mere lack of a license does not necessarily mean that he violated the sections of the Consumer Protection Act that plaintiff brought her action under. He was considering all of the plaintiff's testimony. He considered the defendant's testimony. He considered his original admissions versus the evidence that came in later. Obviously, his credibility determinations, the judge was there to see and hear the witnesses. Those are entitled to a great deal of deference. And I do believe that he did not make any errors in his assessment of the party's credibility at the trial of this case, and that the verdict should be upheld. On the other issues with regard to summary judgment, particularly plaintiff mentioned, why should she need an expert? She needs an expert because under D.C. law, when an action or a subject is so closely tied to a particular profession or involves safety or security, it is one that requires expert testimony. The question here is, did Mr. Aviles negligently install the furnace in such a way that it caused a subsequent gas leak? Plaintiff assumes that that gas leak was caused by him not tightening it. She chose not to put an expert in for that reason. Eleven months later, after her disclosure deadline, six months after the rebuttal deadline, three months after the close of discovery, and three weeks before the summary judgment motion, she finally came up with an expert. Never really explained why it took so long other than to say COVID, but did not explain what efforts she made during COVID that were thwarted by that process. And to have an expert brought forth at that late date with an opinion that relates to nothing else that had ever been brought out in the case, nothing that anyone else had ever discussed, significantly prejudiced the defendant. And I believe the court appropriately exercised this discretion in striking that particular expert for the reasons cited in the opinion. With regard to the other issues on summary judgment, I believe that there is in the record no dispute of material fact on the issues of negligence, on the issues of breach of contract, and on the issues of common law misrepresentation. With particular issue to the breach of contract, I do note that plaintiff for the first time brings up in her appeal the idea of the contract is void or voidable. What was the contract exactly? The contract, if looking at the summary judgment record, is a single page piece of paper, and it is in the plaintiff's, I'm sorry, defendant's supplemental appendix. I apologize for that. It's the supplemental appendix, and it is page SA-5. It is a single page document, handwritten on a form filled out. And at her deposition, Ms. Williams testified that she received that document either at or before the time that work began, and that she signed it. She argues in her brief that, you know, she called it an invoice at trial, and therefore that should defeat summary judgment. But that evidence wasn't in the summary judgment record. The summary judgment record indicates that this document, which shows exactly what he was going to install and how much he was charging for it, was something that she received before the work was done. In terms of the claim that- But then the claim is about the leak, which isn't really addressed on this page. So, is it like an implied warranty? She simply alleged that he negligently installed it, and her claim is that this contract required him to comply with all the codes and workmanlike fashion and such things. I'm asking the breach of contract claim, not the negligence. Right. The breach of contract claim- The breach of contract. It was that he improperly installed the gas line that led to the leak. She also claimed- Is it an implied warranty or something? Because it doesn't say anything in the contract. There is. I believe he writes on here somewhere, one year, three years for labor warranty. That is written in the center section of page SA-5, where he writes three years for labor warranty. And the breach of contract claim also encompasses an allegation that he didn't install other parts of the system right, that the contract doesn't even show that he installed, and that he denies he was ever asked to install. But in terms of her argument that this contract is void or voidable, she is trying to recover under the contract. She can't sort of have it both ways. She either has to recover under the contract or the contract has to be void. But I would argue that the issue isn't properly before this court, because she never did argue that before the district court at any point. Thank you. Thank you. Thank you very much. Thank you. We'll give you one minute for the question. Thank you. Ms. Corson argues on my behalf always, as opposed to the experts, I did have two experts named within the disclosure period. They were two trained dealers who actually had investigated and looked over the HVAC system a week after the leak was discovered, not by anyone but Washington gas technician Wayne Madden. And that is the causation, and that is the way it's going. The two trained experts were Jiffy's and Frosty's, both Tim and Wayne actually saw and looked at the installation and declared it was horrible and shoddy. They were in place to serve as expert witnesses. The court in deciding to exclude the experts did not recognize that in the expert notice, they were listed as well as Wayne Madden, who was the Washington gas technician who discovered the leak on the furnace two days after I left the hospital. So the allegations that Ms. Carson talks about, about my not being having the new expert, Brian Brammel, was only hired after the deposition when Mr. Aviles disclosed to all of us on April 23rd that he was not licensed and that he talked about the process he used. And therefore a month after the deposition, I received the transcripts and going through the transcripts and then I hired an engineer. The difference is I told them I did not need a mechanical engineer because negligence per se was not necessary. This is in your briefing, so thank you. So that's so and that's the other part I'd like to just thank you. Thank you, Your Honor. Case is submitted. Thank you. Thank you.
judges: Pan; Garcia; Edwards